Raul Huerta & Kathleen Huerta

13024 Malvasia Way

Rancho Cucamonga, CA 91739

Cell: (909) 899-9562

Plaintiffs, In Pro-Per

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA — EASTERN DIVISION

ED CV 12 - 01702 VAP (SPx)

|  |  |
|---|---|
| RAUL HUERTA & KATHLEEN HUERTA, as | **COMPLAINT FOR VIOLATION OF FEDERAL LAWS** |
| Plaintiffs, | 1. DECLARATORY RELIEF TITLE [28 U.S.C.§§ 2201,2202] |
| vs. | 2. NEGLIGENCE |
|  | 3. QUASI CONTRACT |
| CITIMORTGAGE, INC; QUALITY LOAN SERVICE CORPORATION; and DOES 1 THROUGH 10 INCLUSIVE, | 4. VIOLATION OF [12 U.S.C. § 2605] |
|  | 5. VIOLATION OF TITLE [15 U.S.C. §§ 1692 et seq.] |
| Defendants, | 6. VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS [CODE § 17200, et seq.] |
|  | 7. ACCOUNTING |
|  | JURY TRIAL DEMANDED |

# TABLE OF CONTENTS

**I.** JURISDICTION, VENUE ........................................................ 3

**II.** THE PARTIES.................................................................. 3

**III.** GENERAL FACTUAL ALLEGATIONS ........................................... 5

**IV.** INTRODUCTION................................................................ 5

**V.** MERS ROLE IN THE SECURITIZATION AND

    ITS' EFFECT ON THE CHAIN OF TITLE.......................................... 15

**VI.** THE FABRICATED ASSIGNMENT

    IS A FRAUDULENT LIEN.................................................... 18

**VII:** PLAINTIFFS HAS SUFFERED.......................................... 21

FIRST CAUSE OF ACTION-DECLARATORY RELIEF......................... 24

SECOND CAUSE OF ACTION-NEGLIGENCE............................... 26

THIRD CAUSE OF ACTION-QUASI CONTRACT............................. 27

FOURTH CAUSE OF ACTION.............................................. 28

FIFTH CAUSE OF ACTION................................................. 30

SIXTH CAUSE OF ACTION................................................. 31

SEVENTH CAUSE OF ACTION............................................. 33

PRAYER FOR RELIEF...................................................... 34

DEMAND FOR A JURY TRIAL.............................................. 35

LIST OF EXHIBITS......................................................... 36

VERIFICATION AND ACKNOWLEDGEMENT................................ 37-40

# I. JURISDICTION AND VENUE

1. This Court has original jurisdiction over the claims in this action based on Title [28 U.S.C. §§ 1331, 1343, 2201, 2202], [Title 12 U.S.C § 2605], Title [15 U.S.C. § 1692] Title [42 U.S.C. § 1983] which confer original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.[1]

2. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to [Title 28 U.S.C. § 1367].

3. This Court has original jurisdiction over the claims in this action based on [Title 28 U.S.C. § 1332] which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.00.

4. The unlawful conduct, illegal practices, and acts complained of and alleged in this complaint were all committed in the Central District of California and involved real property located in the Central District of California. Therefore, venue properly lies in this District, pursuant to [Title 28 U.S.C. § 1391(b)].

# II. THE PARTIES

5. PLAINTIFFS, Raul Huerta and Kathleen Huerta, at all times herein relevant to the complaint are the owners of real property commonly known as 13024 Malvasia Way, Rancho Cucamonga, CA 91739. ("Plaintiffs")

///

///

---

[1] The Ninth Circuit instructs that in actions brought under 28 U.S.C. § 2201, district courts must first determine whether there is actual controversy within its jurisdiction by analyzing the factors enumerated in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). The *Brillhart* factors require the Court to (1) avoid needless determination of state law issues; (2) discourage litigants from filing declaratory actions as a means of forum shopping; and (3) avoid duplicative litigation. *Brillhart*, 316 U.S. at 495; *see also Schafer v. Citimortgage* No. CV 11-03919, 2011 WL 2437267 (C.D. Cal. June 15, 2011). As held by the court *Schafer*, this action does not involve a needless determination of state law issues, does not involve forum for shopping, and is not duplicative litigation.

6. DEFENDANT, CITIMORTGAGE, INC; a New York Corporation; as the purported original servicer of the alleged debt *("Debt Collector & alleged Creditor of the alleged debt")*

7. DEFENDANT, QUALITY LOAN SERVICE CORPORATION (Quality); a California Corporation; alleged Trustee of the Deed of Trust by Trustor. *("Debt Collector and alleged Trustee of the Deed of Trust").*

8. DOES 1 THROUGH 10 INCLUSIVE, Plaintiffs do not know the true names and nature of defendants DOES 1 THROUGH 10 INCLUSIVE, and will amend the complaint when their true identities have been ascertained according to proof at trial.

9. Whenever reference is made in this complaint to any act of any defendant(s), that allegation shall mean that such defendant acted individually and jointly with the other defendants.

10. Any allegation about acts of any corporate or other business means that the corporation or other business did the acts alleged through officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

11. At all relevant times, each defendant committed the acts, caused or directed others to commit the acts, or commit the acts alleged in this complaint. Additionally, some or all of the defendants acted as the agent of the other defendants, and all of the defendants acted within the scope of their agency if acting as an agent of the other.

12. At all relevant times, each defendant knew or realized that the other defendants were engaging in or planned to engage in the violations of law alleged in this complaint. Knowing or realizing that the other defendants were engaging in or planning to engage in unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and did

encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other defendants in the unlawful conduct.

## III: GENERAL FACTUAL ALLEGATIONS

13. The Plaintiffs are informed and believe and allege thereon that defendants are third party strangers to their alleged debt and mortgage and have no ownership interest entitling them to collect payment or declare a default. The defendants have been engaged in an elaborate business practice to deceive, misrepresent and have schemed to commit fraud and other acts of fraud against the Plaintiffs in order to collect on alleged debts, Defendants have resorted to "papering the file" by fabricating and filing an "Corporate Assignment of Deed of Trust" (Exhibit A), employing individuals who have no authority or personal knowledge of the facts to which they attest, and falsely representing to Plaintiffs and the court that they have the right to take the Plaintiffs real property away. Not only is defendants' conduct a *criminal violation* of California's Mortgage Fraud Statute, Cal. Penal Code section 532(f)(a)(4)[2], and an affront to long-standing property laws, but their reliance on fabricated and forged documents undermines the integrity of the judicial system. Through this action, Plaintiffs seek to stop defendants fraudulent practices, discover the true holder in due course of the alleged debt evidenced by the "Promissory Note", and determine the status of defendants' claims.

## IV. INTRODUCTION

14. During the high times of the mortgage refinancing and mortgage origination era 2002-2007 Wall Street investors looked to feed their insatiable and reckless greed for profit by tapping directly into the American dream - home ownership. Mortgage lenders and investment banks aggressively lured the

---

[2] Cal. Penal Code section 532(f)(a) provides that "a person commits mortgage fraud if, with the intent to defraud, the person does any of the following...(4) files or causes to be filed with the recorder of any county in connection with a mortgage loan transaction any document the person knows to contain a deliberate misstatement, misrepresentation, or omission."

American people into the predatory loans with teaser interest rates and into purchasing homes with inflated appraisals[3] and under the promise that the booming real estate market would continue to boom.  Wall Street took the soon to be toxic loans and bundled them into *"Mortgage CitiMortgage, Incked Securities"* through a process known as *"Securitization"*.  These *"Securities"* were then sold to investors in the form of certificates, whereby the investors became the *"Certificateholders"* of the securities that were to be fed by the toxic loans.

15.  The Defendants CitiMortgage, Inc and others became facilitators of this process by gathering large numbers of loans originated through other entities; the process is referred to as *"Pooling of Loans for Securitization"*, the Defendant pooled and placed these loans into *"Common Law Trusts"* and issued Certificates in exchange of Notes that were transferred into the *"Securitized Trust"*.  As the Certificates were traded into the marketplace the Wall Street players placed their bets and purchased contracts that would pay them in the case of default; they *shorted* the same market they were feeding.

16.  Knowing that the predatory loans would soon default and turn into toxic assets Wall Street placed his bets accordingly and bought exotic insurance products

---

[3] (Reuters) - A former home appraiser will receive $14.5 million as part of a whistleblower lawsuit that accused subprime lender Countrywide Financial of inflating appraisals on government-insured loans, his attorneys said Tuesday. Kyle Lagow's lawsuit sparked an investigation that culminated in a $1 billion settlement announced in February between Bank of America Corp (NYS:CITIMORTGAGE, INC - News) and the U.S. Justice Department over allegations of mortgage fraud at Countrywide, his attorneys said in a news release. Bank of America bought Countrywide in 2008.Lagow's suit was one of five whistleblower complaints that were folded into the $25 billion national mortgage settlement that state and federal officials reached with Bank of America and four other lenders the year. His suit was unsealed in February, but the amount of his settlement had not been disclosed.
http://finance.yahoo.com/news/bank-america-whistleblower-receives-14-232819912

in the form of Credit Default Swaps[4]. The eventual meltdown of the market provided Wall Street with even more ridiculous profits.

17. However, as Wall Street which includes our Defendants CitiMortgage, Inc and others, rushed to *"Securitize"* these loans they forgot their own rules and written compliance documents that are required to be followed by the letter of the law. Wall Street created a situation by which the *"Mortgage CitiMortgage, Incked Securities"* that were supposed to be CitiMortgage, Incked by mortgages were actually not secured by anything except the number of dollars associated with the alleged transactions and not by any actual mortgages to CitiMortgage, Inck the securities[5]. Under the standard model for securitization the "Notes" were **supposed** to be sold and transferred into a trust pool *"Securitized Trust"* that holds the promissory notes as collateral on the securities bought by investors (*"Certificateholders"*). These *"true sales"* allow the original lenders to move the notes off their books, eliminating the need to maintain capital-adequacy reserves against defaults. The purpose of securitizing collateral debt obligations was to provide a large supply of money for the lenders for originating loans, and to provide investments to bond holders - which were expected to be relatively safe.

18. The formation of a proper and compliant Securitized Trust requires that the Trust to be Governed by (1) the Pooling and Servicing Agreement; (2) the Mortgage and Loan Agreement; (3) the <u>424(b)(5)</u> Prospectus; (4) the Common

---

[4] In 1995, JPMorgan created the Credit Debt Swap (CDS), essentially, a CDS is a form of insurance intended to protect the buyer of the policy in the case the borrower defaults on the loan. If the borrower defaults, the buyer of the CDS receives a large payout for the cash value of the defaulted loan. The main difference between traditional insurance policy and a CDS is that anyone can purchase a CDS; even those who have no direct "insurable interest" in the lender. CDSs' were instrumental during the housing bubble because once the banks ran out of creditworthy borrowers; they had to run to un-creditworthy subprime borrowers. To avoid losses from defaults, the banks moved these risky mortgages off his books by bundling them into "securities" and selling them to investors. The CDS market is the only major financial sector of the market that is not governed by any rules, Due to the sector the estimated exposure to losses is in the Trillions for the taxpayers.

[5] The transfers of assets were only reflected on the Books (Ledgers) and no actual documents were properly endorsed or assigned over to the Trustee of the Securitized Trust.

Law Trust rules of Delaware or New York, depending on its origin, and (5) Internal Revenue Code section 860A through 860G better known as the Real Estate Mortgage Investment Conduit ("REMIC") rules.

19.  An essential aspect of the mortgage securitization process is that the Trust must obtain and maintain good title to the mortgage loans comprising the pool for that certificate offering.  This is necessary in order for the Trustee of the purportedly Securitized Trust to be legally entitled to enforce the mortgage loans in the case of default.   In addition to other required documentation to complete the Collateral File of any given loan, two documents relating to each mortgage loan must be validly transferred to the Trust as part of the securitization process -- the *(Promissory Note)* and the security instrument *(Deed of Trust or Mortgage Note)*. In this case, on information and belief, neither document was validly transferred within the required timelines as stipulated by the pooling and servicing agreement.

20.  Here, Plaintiffs' allege that the "true sale" never took place due to the failure to follow the basic legal requirements for the transfer of a negotiable instruments under the Rules Governing the Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities "FAS140" and thereby, Defendant CitiMortgage, Inc did not acquire any legal, equitable, and pecuniary interest in the Plaintiffs' Note and Mortgage.  As a result, therefore, CitiMortgage, Inc which purports to be the Plaintiffs' creditor, actually has no secured or unsecured right, title, or interest in the Plaintiffs' Note and Mortgage, and has no right to collect mortgage payments, demand mortgage payments, or report derogatorily items against the Plaintiffs' credit[6], or to default the Plaintiffs.

---

[6]  Plaintiffs' allegations are supported by the recent ruling of the Massachusetts Supreme Judicial Court in *U.S. Bank vs. Ibanez, SJC-10694, 2011 WL 38071.In Ibanez*, the court invalidated two foreclosure sales, finding that the lower court did not err in concluding that the securitization documents submitted by U.S. Bank and Wells Fargo failed to demonstrate that they were the holders of the mortgages.  The court rejected the banks argument that the mortgages were transferred via the applicable Pooling and Servicing Agreement and made clear that, to foreclose, the banks must prove a complete and unbroken chain of title from origination to securitization trust in full compliance of the PSA, i.e. establish ownership of the mortgage.

Furthermore; the FAS-140 rules are used by the United States Treasury as to the evaluation and extinguishment of the Troubled Assets as set forth in the Economic Stabilization Act of 2008 under [12 U.S.C.§5201 ET SEQ.] ; as such the importance of complying with such procedure is essential.

21. The Plaintiffs further allege that, on information and belief, that CitiMortgage, Inc cannot act as a Collector, Servicer, Creditor or Beneficiary as the Trust that purportedly contained the Certificates "Aegis Asset Backed Securities Trust 2006-1, Mortgage Backed Notes" was dissolved and terminated due to the *Economic Stabilization Act of 2008* Under [12 U.S.C. §5201 ET SEQ.] and the purported "*Corporate Assignment of the Deed of Trust*" is a fabrication of a false document by Defendant CitiMortgage, Inc to collect subrogation payments from the Troubled Asset Relief Program (hereafter; TARP).   The actions of the Defendants CitiMortgage, Inc and their agents representing themselves to be employees of MERS and legitimate witnesses for the purported "Corporate Assignment of Deed of Trust" are fraudulent.

22. Despite the procedural requirements and the rules governing the proper accounting procedures governing the Accounting for Transfers and Servicing of Financial Assets and Extinguishments of Liabilities "FAS-140" and Federal and State laws overseeing the compliance of such transactions, the Defendants attempt to take advantage of the complex structured financial system to defraud the Plaintiffs as they have done with millions of other homeowners from the inception of the meltdown.  Plaintiffs anticipate that the Defendants and their counsel will seek a Court-sanctioned bailout by submitting a blatantly fabricated "Assignment" or a copy of the Deed of Trust and the Note that does not reflect any information or proof that the Defendants are the true "Assignees" or "Beneficiaries" via a Request for Judicial Notice, thereby committing fraud on the court, and attempting to further mislead Plaintiffs that the Defendants CitiMortgage, Inc and Quality Loan

Service Corporation are actual creditors, and are entitled to enforce their alleged obligation.

23. The Plaintiffs do not dispute that they owe an amount on their alleged mortgage obligation[7]. Rather, Plaintiffs dispute the Defendants claims as to having the legal right and the ownership interest that has been disclosed and contradicted by the Defendant CitiMortgage, Inc on multiple occasions as to the purported Debt and Mortgage "the Loan", and seek the Court's assistance in determining who the holder in due course is of their alleged Note and alleged Deed of Trust, and specifically what rights, if any , the Defendants have to claim a secured or unsecured interest in the Plaintiffs' alleged Note or alleged Mortgage "the Loan".

24. The Plaintiffs' information and belief is based on (1) Detailed analysis of the property's title records; (2) The analysis of the mortgage documents on record and with escrow; (3) The detailed study and review of the *Economic Stabilization Act of 2008* passed by Congress; (4) The Plaintiffs have also conducted detailed study of the ongoing events with respect to "*Legacy Assets*", "*Legacy Securitization Program*", "*Legacy Loan Programs*" and other offerings by the respective governing agencies to entities such as the Defendants CitiMortgage, Inc (The collectors of the alleged debt); (5) an audit of filings with the Securities and Exchange Commission ("SEC"), including the Trust's 424(b)(5) Prospectus and the Pooling and Servicing Agreement ("PSA"); (6) CitiMortgage, Inc balance sheet and other collateral filed with the SEC as a public company and the FDIC.

25. The Plaintiffs' are informed and allege that the Defendants have assumed the alleged debt from parties unknown at this time through a "*credit sale*"

---

[7] However, simply because Plaintiffs do not dispute the fact, the court should not condone CitiMortgage, Inc; and Quality Loan Service Corporations' fraudulent behavior and predatory mortgage collection practices and allow it to collect on money it was not owed. Simply put, the court should not allow the defendants to trample over 200 years of well-settled property laws just because they "owe somebody money."

transaction utilizing their credit as collateral[8]. The Defendants are debt collectors under the meaning of "*Debt Collector*" as stipulated by the "F.D.C.P.A" 15 U.S.C. § 1692 (a) (6); the Defendants are not the originators of the alleged debt; the Defendants also fall within the meaning of the "F.D.C.P.A" collecting alleged debts at the time that the alleged debts were in default. In addition the Defendant does not show the purported debt on their balance sheet. This means that the Defendant CitiMortgage, Inc is collecting on behalf of another as a debt collector and not an Assignee; in addition the servicer cannot be treated as an Assignee of a debt when they are the Servicer of the alleged debt [see 15 U.S.C. § 1641 (f)(2)].

26. On or about October 11, 2006 the Plaintiffs executed a Note and Mortgage in favor of "Aegis Wholesale Corporation" a mortgage banker that conducted financing of residential properties, (hereafter "Aegis" obtaining an alleged loan on the property located at 13024 Malvasia Way, Rancho Cucamonga, CA 91739; MERS was named on the Deed of Trust as the purported "*nominee*" and "*beneficiary*" of the Deed of Trust.

27. The Plaintiffs are informed and allege that "Aegis" never sold, transferred, assigned or granted their Note or Mortgage to the sponsor, depositor; the Defendants are merely third – party strangers to the alleged debt "the Loan" transaction. Furthermore, Plaintiffs allege that none of the Defendants or Doe Defendants can demonstrate or document that Plaintiffs' Note was ever endorsed, assigned or/and transferred to CitiMortgage, Inc. In fact, Plaintiffs have requested for the Defendants CitiMortgage, Inc and Quality to verify and validate their debt. Although the information should be readily available to any mortgage servicer, CitiMortgage, Inc and Quality have failed to provide any evidence to verify the

---

[8] "It has been settled beyond controversy that a national bank, under Federal Law, being limited in its power and capacity, cannot lend its credit by nor guarantee the debt of another. All such contracts being entered into by its officers are ultra vires and not binding upon the corporation." It is unlawful for banks to loan his deposits

owner and amount of the Plaintiffs' Mortgage or validate the claim to the Plaintiffs' debt obligation.

28. The Plaintiffs allege that the parties involved in the alleged securitization and alleged transfer of the Plaintiffs' Note and Mortgage failed to adhere to section **2.01** of the PSA, which requires that Plaintiffs' Note and Mortgage be properly endorsed, transferred, accepted, and deposited with the Securitized Trust (or its custodian) on or before the "***Closing Date***" indicated on the Prospectus ; the "***Closing Date***" is the date by which all the Notes and Mortgages must be transferred into the "Common Law Trust". The failure to do so results in the Note and Mortgage not being part the "Common Law Trust", such that is not a loan that either CitiMortgage, Inc or Quality can attempt to collect on.

29. On or about March 23, 2012, "Derrick White", purportedly the alleged "Assistant Secretary" for MERS, allegedly executed a document purporting to be an "Corporate Assignment of the Deed of Trust" ("hereafter, Assignment"), in which he intentionally misrepresented to the Plaintiffs in writing that CitiMortgage, Inc has acquired the interest in the Plaintiffs' Note and Mortgage, and that MERS has endorsed, transferred, and negotiated the Plaintiffs' Note to Defendant "***For Good and Valuable Consideration***".   In fact, no such transfer of interest took place, a fact that "Derrick White", CitiMortgage, Inc and Quality were/are aware of (See Exhibit A), attached hereto is a true and correct copy of the Assignment, executed on 03/23/2012. **Plaintiffs specifically dispute the contents and the authenticity of the document.**

30. On or about March 23, 2012, "Tammi Mylek Williams", purportedly the alleged "Notary Public" witnessed the purported "Assistant Secretary, Derrick White" executing the alleged "Assignment" from MERS to "CitiMortgage, Inc". In fact, no such transfer of interest took place, a fact that "Tammi Mylek Williams", CitiMortgage, Inc and Quality were/are aware of (See Exhibit A), attached hereto is a true and correct copy of the Assignment, executed on

03/23/2012. **Plaintiffs specifically dispute the contents and the authenticity of the document.**

31. The Plaintiffs allege that the "Assignment" that was executed after the closing date of the trust; The dubious "*Assignment*" raises numerous red flags and further demonstrates that the Plaintiffs' Note and Mortgage were not deposited into the Trust by the closing date, and that the "Assignment" was fabricated in attempt to "paper over" the fatal securitization defects by individuals that commit these acts as a daily regimen. The acts perpetrated by the individuals acting as a "Assistant Secretary of MERS" and the "Public Notary" as the purported witness of the State was caused by the Defendant CitiMortgage, Inc as part of a scheme to defraud the United States Treasury and the Plaintiffs by foreclosing and collecting TARP funds as an assigned agent of the Department of Treasury pursuant to 12 U.S.C.§5211(c)(2)(3).

32. The failure to deposit Plaintiffs' Note into the "Common Law Trust" before the closing date is a violation of the PSA and New York Trust Law. Consequently, the "Common Law Trust" and the purported trustee at the time which the Trust existed cannot claim any legal or equitable right, title, or interest in the Plaintiffs' Note and Mortgage; In addition CitiMortgage, Inc and/or Quality as a Trustee, Collector, Servicer, Assignee, or alleged Beneficiary cannot take any action which is not authorized by the Securitization Agreements that created and govern the "Common Law Trust".

33. The Plaintiffs' do not allege or assert that they are the beneficiary or party to the PSA. Rather, Plaintiffs allege that the failure to securitize their Note and the subsequent fraudulent "Assignment" makes it impossible for CitiMortgage, Inc or "Common Law Trust" to claim, allege or assert that it was assigned, transferred or granted Plaintiffs' Note or Mortgage, or any interest therein, in any manner whatsoever. Plaintiffs also allege that the failure to securitize their Note

and Mortgage has resulted in an unperfected lien that defendants cannot enforce in any manner whatsoever[9].

34. The Plaintiffs in good faith relied on CitiMortgage, Inc representations and have been damaged in the following ways: (1) the Plaintiffs in good faith relied on the representations made by CitiMortgage, Inc employees and team members and became delinquent on their mortgage in order to be assisted for a loan modification as told by the customer representative and have lost multiple credit lines and have incurred delinquencies on their credit report; (2) the Plaintiffs in good faith relied on Defendants CitiMortgage, Inc representations as being the purported Creditor, Owner, Servicer, or Beneficiary and entered into a contract for Loan Modification that was soon after breached by the Defendant Chase in an attempt to redirect funds into accounts that were not part of the alleged Loan Servicing System; (3) the Plaintiffs in good faith relied on the representations of the Defendants CitiMortgage, Inc and entered into an agreement for Loan Modification that was intentionally breached so that the Defendant could illegally foreclose on the Plaintiffs' property in order to collect *TARP* funds pursuant and in violation of [12 U.S.C.§5211(e)] in order to be unjustly enriched; (4) multiple parties may seek to enforce their alleged debt obligation against theirs; (5) the title to the Plaintiffs' home has been clouded and rendered unmarketable (unless more fraudulent actions are taken to show the foreclosure proceedings as proper

---

[9] These allegations are identical to those brought by the Nevada Attorney General against Bank of America, CITIMORTGAGE, INC Home Loan Servicing, and QUALITY LOAN SERVICE CORPORATION, in which Attorney General Catharine Cortez Masto alleges that these entities engaged in unlawful and deceptive practices by misrepresenting to homeowners that they had the authority to foreclose despite the fact that these were fatal deficiencies in transfers to the securitization Trusts, State of *Nevada vs. Bank of America et al.*, No.3:11-cv-00135-RJD,(C.D. New August 30, 2011). The AG concludes that, "[t]hese are mere technicalities. The PSA's spelled out specific procedures in order to ensure a proper transfer, protect the Trusts as the holders in due course, and avoid subjecting the Trusts to taxation. In addition, borrowers need to know the actual holders of his mortgages so that, for example, they can investigate and assert available defenses in foreclosures, including that the agent of the trustee lacks authority or standing under the Note."*Id* at ¶ 146.

and legal),  as any would be buyer of the Plaintiffs' property will find themselves in legal limbo, unable to know with any certainty whether they can safely buy the Plaintiffs property or get title insurance; (6)  the Plaintiffs  have paid fees in amounts unknown to  the wrong party and other payments for an undetermined amount of time and overpaid in interest that was over calculated;   (7)  the Plaintiffs are unable to determine whether they sent their monthly mortgage payments to the right party;  (8)  their credit worthiness has been destroyed due to the Defendants misreporting of alleged debts being delinquent without proper standing;  (9)  the Plaintiffs have expended significant funds to cover the cost associated with processes involved, credit lines closed, legal fees and other fees paid to the wrong parties.

35.  In addition to seeking compensatory, consequential, punitive, and other damages, Plaintiffs' seek Declaratory Relief as to the capacity of the Defendant to enter and execute contracts and whether the Deed of Trust (Mortgage) secures any, obligation of the Plaintiffs' in favor of Defendants CitiMortgage, Inc or Quality such that any of them can collect Plaintiffs' mortgage payments, demand payment or engage in debt collection activities.

## V: MERS ROLE IN THE SECURITIZATION AND ITS EFFECT ON THE CHAIN OF TITLE TO THE PLAINTIFFS' PROPERTY

36.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a private corporation that administrates the MERS system, a national electronic registry system that purports to track the transfer of ownership interests and servicing rights in mortgage loans, including the Plaintiffs "alleged debt" loan.  In 1993, the MERS system was created by several large lenders; eventually other mortgage banking entities became members.  Members subscribe to the MERS system and pay an annual fee for the electronic processing and tracking of ownership and transfers of mortgages.  Members contractually agree to appoint MERS as their common agent

on all mortgages they register in the MERS system.  In essence, MERS privatized the mortgage recording system, creating a situation where in a borrower can no longer go to the Office of the County Recorder and determine who their lender actually is at any given point in time.  Coincidentally, the formation of MERS corresponds with the period of time which the Glass-Steagall Act was enacted to regulate the FDIC and Banking and the repeal of the act in 1999, and the introduction of another bill known as the Gramm-Leach- Bliley Act; the golden age of securitization had started.

37.  MERS is listed as grantee in the official records at the County Register of Deeds Offices.  The lenders were supposed to retain the interest in the Promissory Notes, as well as the servicing rights to the mortgages, not MERS.

38.  The operative document defining MERS and its rights and functions is the Deed of Trust ("Deed of Trust" or "Trust Deed").  The Deed of Trust conveys a security interest and power of sale in the real property "real estate" to the lender only, not MERS[10].

39.  The Plaintiffs allege that MERS is merely an electronic registration system and not a true beneficiary, and did not grant, assign, or transfer any true or pecuniary beneficial interest in the Plaintiffs' Note and Mortgage. Contrary to the recitations contained in the "Assignment(s)" purportedly executed on March 23, 2012, the "Corporate Assignment of Deed of Trust"; (1) MERS did not receive any value or consideration for the Plaintiffs' Note and Mortgage;  (2) MERS did not "grant, assign, or transfer" any interest in the Plaintiffs' Note and Mortgage; and  (3) "Derrick White" the purported signatory of the purported " Corporate Assignment of Deed of Trust" (Exhibit A), was not the "Assistant Secretary for

---

[10]  This Security Instrument secures to the Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property located in the County of Orange: [legal description of the property] Deed of Trust ¶ R.

MERS" at any time and lacked the requisite corporate and legal authority to effect an actual "Assignment" of the Plaintiffs' Note and Mortgage (assuming that MERS had any legal, equitable, or pecuniary interest in the Plaintiffs' Note and Mortgage, which the Plaintiffs assert and claim it does/did not have.

40. The Plaintiffs are informed and allege that MERS own membership rules directly prohibit the company from ever claiming ownership of any mortgages or negotiable instruments, including the mortgage for the Plaintiffs[11] (Exhibit B). In fact, in a September 2009 deposition, former President of MERS, R.K. Arnold admitted that MERS does not have a beneficial interest in any mortgage, that it does not loan money, and that it does not suffer a default if a borrower fails to repay a mortgage loan[12]. Therefore, MERS does not own the Plaintiffs Note and Mortgage, and did not "grant, assign, or transfer" any interest therein to Defendants CitiMortgage, Inc or any other Doe defendants at any time. Furthermore the alleged assignment that has been recorded to CitiMortgage, Inc on March 26, 2012 could have never actually happened before or there-after.

41. The Plaintiffs are informed and allege that the purported "Corporate Assignment" of the Plaintiffs' Note and Mortgage to CitiMortgage, Inc is a fraudulent lien claim and in direct contravention of the laws and customs of California.[13]

---

[11] A successor-in-interest to the beneficial interest in the trust Deed may choose to engage MERS as its agent by execution of a subsequent agreement, but MERS and its members cannot force MERS upon all future purchasers simply by claiming such authority in the original deed of trust.

[12] See Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc,* Civil Action No. CV-08-900805 (Ala. Cir. Sept.25, 2009) available at (http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[13] "Whatever 'necessary to comply with law or custom' means, and there is no evidence in the record to explain it, it should not mean that U.S. Bank or MERS' can contract away their obligations to comply with foreclosure statutes." *In re Salazar,* 448 B.R. 814.823 (finding that the MERS system is not an alternative to statutory foreclosure laws, which "must be respected." and affirming that "[t]her court ...joins the courts on other states that have rejected MERS' offer of an alternative to the public recording system.") *Id.* at 824

42. Therefore, based on the foregoing, MERS did not, *in fact*, assign any interest to CitiMortgage, Inc, such that CitiMortgage, Inc can demand mortgage payments or report the Plaintiffs' payments as delinquent or attempt to foreclose on the property.

## VI: THE FABRICATED ASSIGNMENT OF DEED OF TRUST IS A FRAUDULENT LIEN THAT CONVEYED NO INTEREST TO CITIMORTGAGE, INC

43. On March 26, 2012, CitiMortgage, Inc caused the "Corporate Assignment of Deed of Trust" to be recorded with the San Bernardino County Recorder's Office. The "Assignment" alleged "**For Good and Valuable Consideration**" MERS granted, assigned, and transferred to CitiMortgage, Inc all beneficial interest in the Deed of Trust. The "Corporate Assignment of Deed of Trust" was purportedly signed by "Derrick White" as the alleged "Assistant Secretary" of MERS. The Plaintiffs allege that no such transfer ever occurred and that "Derrick White" is not an "Assistant Secretary" of MERS.

44. The Plaintiffs are informed and allege that "Derrick White" is an individual who simply signs thousands of property record documents without any legal or corporate authority whatsoever.

45. In fact, the alleged "Assignment" was fraudulently executed without MERS or Aegis's knowledge or authorization.

46. The alleged Assistant Secretary for MERS "Derrick White" was never, in any manner whatsoever, appointed as an "Assistant Secretary" by the Board of Directors of MERS, as required by MERS Corporate By-Laws and adopted Corporate Resolution by the Board of Directors of MERS. For that reason, the individual acting as the alleged "Assistant Secretary of MERS" never had, nor has, any corporate or legal authority from MERS, or the lender's successors and

assigns, to execute the purported "Assignment."[14]  This was an intentional act
undertaken by the Defendants CitiMortgage, Inc done knowingly with specific
intent that the consequences of their actions be brought to fruition, which they have
as evidenced by the instant debt collection activities.

47. The "Assignment" is a fraudulent lien claim, and the execution, filing,
and recordation of the document was created for the purpose of facilitating and
aiding and abetting the illegal, deceptive, and unlawful collection of the Plaintiffs'
mortgage payments, as well as engaging in other wrongful debt collection
activities.

48. The Plaintiffs allege that any amounts allegedly owed under the Note is
subject to equitable offset by the actual, consequential, special, and punitive
damages owed to the Plaintiffs from Defendants, which amount is currently
unknown, but will be determined upon conducting discovery.  Plaintiffs believe
that this amount will be in excess of the amount of their alleged obligation.

49. The Defendants' attempt to assign or transfer a Deed of Trust by itself,
does not allow enforcement of Plaintiffs' Note and Mortgage. As alleged in this
complaint herein, Plaintiffs' Note and Mortgage were not properly negotiated,
endorsed, and transferred to Defendants CitiMortgage, Inc who seeks to cause its
purported authorized agent(s) Defendants CitiMortgage, Inc. and/or Quality to
collect mortgage payments and engage in other unlawful collection practices.

50. California Commercial Code section 3301 limits a negotiable
instrument's enforcement to the following:

> "Person entitled to enforce" an instrument
> means(a)the holder of the instrument,(b) a

---

[14] The instant case is analogous to *Kingman holdings, LLC v. Citimortgage, Inc. and Mortgage Electronic Registration Systems, Inc.*, WL 1883829 ( E.D Tex. 2011)("*Kingman*"), where the court denied a motion to dismiss with similar causes of action as those that are pled here on the basis that the Plaintiffs had adequately challenged the signatory's alleged title as 'Vice President" of MERS. The *Kingman* court held that the Plaintiffs had adequately pled that the assignment executed by Nate Blackstun as "Vice President" on behalf of MERS, was void because Blackstun was not actually appointed by MERS to be its Vice President.

nonholder in possession of the instrument who has the rights of a holder, or (c) a person not in possession of the instrument who is entitled to enforce the instruments pursuant to Section 3309 or subdivision (d) of Section 3418.  A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

51. The Plaintiffs are informed and believe and allege that none of the Defendant's were/are present holders in due course of the Plaintiffs' Note such that they can enforce Plaintiffs' obligation and demand mortgage payments.

52. The Plaintiffs are informed and believe and allege that the Defendant's were not, and are not, a nonholder in possession of the Plaintiffs' Note who has rights of the holder.

53. If there is a holder due in course of Plaintiffs' Note at issue, pursuant to California Commercial Code section 3301, et seq, and/or the PSA, it is the entity that can establish a pecuniary, legal, and equitable interest in the property, and provide an unbroken chain of title to Plaintiffs Note and Mortgage.[15]

---

[15]  The testimony of Linda DeMartini, a 10-year litigation manager for Countrywide, in *In Re Kemp*, Case No. 08-18700-JHW, (Bankr. D. N.J. November 16, 2010)(for publication) exposed the shoddy handling of mortgage notes and deeds of trust of securitized mortgages required to perfect "holder in due course" status. In that case Linda DeMartini described how Countrywide failed to adhere to the most rudimentary of securitization procedures, such as transferring the original promissory note to the trusts that had purchased the loans, as required under the pooling and servicing agreement. Ms. DeMartini testified that it was standard practice for Countrywide to warehouse the original mortgage notes, which were stored in Simi Valley, California, despite securitization contracts that required the notes to be physically transferred to sponsors, trustee or custodians of the securitized trusts. The findings in court decisions all over the country, news stories, attorneys generals' complaints, and state and federal investigations reveal that business practices like Countrywide's were common place and, like Countrywide, most lenders failed to properly comply with protocols required to properly securitize mortgage loans. Ms. DeMartini's testimony has been corroborated by Abigail Field of CNN, who reviewed foreclosures filed in two New York counties between 2006 and 2010 in which Bank of New York was foreclosing on behalf of a Countrywide securitization trust, and found that none of the 104 loans that were examined were endorsed by Countrywide: " ..If the lack of endorsements on these notes is typical- and 104 out of 104 suggests it is - the problem occurs across Countrywide securities." *See* Abigail Field, *At Bank of America, More Incomplete Mortgage Docs raises More Questions*, Fort., (June 3, 2011).

54. On information and belief, none of the Defendant's were/are entitled to enforce the Plaintiffs Note pursuant to § 3309 or subdivision (d) of § 3418

55. The Plaintiffs' allege that, prior to demanding mortgage payments from the Plaintiffs, none of the Defendants had, nor presently have, secured or unsecured legal, equitable, or pecuniary interest in Plaintiffs' Note and/or Deed of Trust as required under California Law - irrespective of who is actually in physical possession of Plaintiffs' Note.

56. The Plaintiffs allege that, on information and belief, CitiMortgage, Inc, and/or its agents are fraudulently enforcing an alleged debt obligation in which they have no pecuniary, equitable or legal interest. Thus, the Defendants CitiMortgage, Inc and/or Quality conduct is part of a fraudulent debt collection scheme.

## VII: PLAINTIFFS HAVE SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT MONETARY, LEGAL AND EQUITABLE DAMAGES

57. The conduct described above by CitiMortgage, Inc; is/was malicious because Defendants knew that they were not acting on behalf of the current pecuniary beneficiary of the Note and Mortgage. However, despite such knowledge, said Defendants continued to demand and collect Plaintiffs mortgage payments.

58. The Defendants engaged and are engaging in a pattern of defrauding the Plaintiffs, in that, on information and belief, during the entire life of the mortgage loan, Defendants failed to properly credit payments made, incorrectly calculated interest on the accounts, and failed to accurately debit fees.

59. On information and belief , at all times material, CitiMortgage, Inc has had and has knowledge that Plaintiffs' accounts were not accurate, but that

---

http://finance.fortune.cnn.com/2011/06/03/at-bank-of-america-moreincomplete-mortgage-docs-and-more-questions/.

Plaintiffs would continue to make further payments based on Defendants inaccurate accounts.

60. On information and belief, Plaintiffs made payments based on the improper, inaccurate, and fraudulent representations as to Plaintiffs' accounts.

61. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs overpaid in interest.

62. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs' credit and credit score have been severely damaged. Specifically, because of the derogatory credit reporting on their credit report by CitiMortgage, Inc Plaintiffs are unable to make use of their credit worthiness and to obtain any credit.

63. As a direct and proximate result of the actions of the Defendants set forth above, the title to the Plaintiffs' property has been slandered, clouded, and its sale ability has been rendered unmarketable.

64. As a direct and proximate result of the actions of the Defendants set forth above, Plaintiffs do not know who the current beneficiary of their alleged Note and Mortgage actually is, such that they are now subject to "Double Financial Jeopardy".

65. As a direct and proximate result of the actions of the Defendants set forth above, *multiple* parties can attempt to enforce Plaintiffs' alleged debt obligations.

66. The conduct of CitiMortgage, Inc and one or more of the Doe Defendants has led to the imminent loss of Plaintiffs' real property and pecuniary damages. The pecuniary damages include, but are not limited to, the cost of over calculation and overpayment of interest, the cost of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, the cost associated with removing the cloud from their property title and attorney's fees, in an amount to be proven at trial.

67. The conduct of CitiMortgage, Inc, and one or more of the Doe Defendants' conduct was malicious because Defendants did not know the identity of the current and true beneficiary of Plaintiffs' Note and Deed of Trust, yet they intentionally and fraudulently covered up this defect by wrongfully recording a fraudulent "Assignment", which would be enable them to ***illegally and fraudulently*** collect on Plaintiffs debt, and which in essence has rendered the title the property unmarketable.

68. The title to Plaintiffs property has been rendered unmarketable and unsalable because of the possibility of multiple claims made against Plaintiffs alleged debt obligation and the underlying security (the subject property). If the "Corporate Assignment of the Deed of Trust" is not cancelled and set aside, Plaintiffs will be incurably prejudiced. Plaintiffs will be denied the opportunity to identify and negotiate with their ***true creditor*** and exercise their right to verify and validate their alleged debt.

69. The Plaintiffs have offered to and are ready, willing, and able to unconditionally tender to their alleged obligation[16].

///

///

///

///

---

[16] Case law makes it clear that **Plaintiffs is only required to allege a credible offer of tender,** not actually tender. *Alicia v. GE Money Bank*, No C 09-00091 SBA, 2009 WL 2136969 at *3 (N.D. Cal. July 16, 2009) (...debtor must allege a credible tender of the amount of the secured debt..."). Moreover, tender is ***not*** required when the owner's action attacks the validity of the underlying debt because the tender would constitute an affirmation of the debt. *Sacchi v. Mortgage Electronic Registration Systems, Inc.* No. CV 11-1658 AHM, 2011 WL 25330299 (C.D. Cal June 24, 2011), at *16 (emphasis added)(citing *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424, (1997); Stockton v. Newman, 148 Cal. App. 2d 558, 564 (1957). *See also, Foulkord v. Wells Fargo Financial California Inc.,* No. CV 11-732-GHK (AJWx) (C.D. Cal May 31, 2011)("...requiring Plaintiffs to tender the amount due on her loan at this time would be illogical and inequitable given that he disputes that Wells Fargo has any rights under the loan.") In light of the fact that Plaintiffs contents the legitimacy of the Defendants' claim to the mortgage payments, it would be ***illogical and inequitable*** to require Plaintiffs to actually tender the amount given that Plaintiffs disputes whether Defendants have any rights under the loan. *See Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997).

## FIRST CAUSE OF ACTION - DECLARATORY RELIEF:
## TO DETERMINE STATUS OF DEFENDANTS'CLAIM
### [28 U.S.C. §§  2201, 2202]
### [Against All Defendants and Doe Defendants]

70.  The Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

71.  Section 2201(a) of Title 28 of the United States Code states:

> In case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under of the Internal Revenue Code of 1986, a proceeding under section 505 or 1146 of title11, or in any civil action involving an antidumping or countervailing duty proceeding regarding a class or kind of merchandise of a free trade area country (as defined in section 516A(f)(10) of the Tariff Act of 1930), as determined by the administering authority, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether, or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

72.  Section 2202 of Title 28 of the United States Code states:

> Further necessary or proper relief based on declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment.

73.  Plaintiffs allege that CitiMortgage, Inc does not have a secured or unsecured legal, equitable, or pecuniary interest in the lien evidenced by the Deed of Trust and that its purported assignments have no value since the Deed of Trust is wholly unsecured.

74.  On or about October 11, 2006, the Defendants claim they had secured enforceable interest in, and perfected lien against, the Plaintiffs' Note, Deed of Trust and Property.

75. Thus, the competing allegations made by Plaintiffs above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the property.

76. Accordingly, Plaintiffs request that the Court make a finding and issue appropriate orders stating the none of the named Defendants or Doe Defendants, have any right or interest in Plaintiffs' Note, Deed of Trust, Property which authorizes them, in fact or as a matter of law, to collect Plaintiffs' mortgage payments or enforce the terms of the alleged Note or Deed of Trust in any manner whatsoever.

77. The Plaintiffs will suffer prejudice if the Court does not determine the rights and obligations of the parties because; (1) Plaintiffs will be denied the opportunity to identify their true and current creditor/lender and to negotiate with them;  (2) they will be denied the right to conduct discovery and have CitiMortgage, Inc and other defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) they will be denied the opportunity to discover the true amount they still owe minus any legal costs, fees and charges.

78. Due to the actual case and controversy regarding competing claims and the allegations, it is necessary that the court declare the actual rights and obligations of the parties and make a determination as to whether CitiMortgage, Inc and other Defendants claims against the Plaintiffs is enforceable and whether it is secured or unsecured by any right, title, or interest in Plaintiffs' property.

79. Furthermore, the conduct of CitiMortgage, Inc and Quality as their agent, and one or more of the Doe Defendants, and each of them, as herein described, has been so malicious and contemptible that it would be looked down upon and despised by ordinary people.  Plaintiffs are therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION – NEGLIGENCE

### [Against All Defendants and Doe Defendants]

80. The Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

81. At all times relevant herein, Quality Loan Service Corporation was acting as a purported agent for CitiMortgage, Inc. Defendants are jointly and severally liable for CitiMortgage, Inc and/or Quality Loan Service Corporation's negligent and reckless conduct.

82. CitiMortgage, Inc as the purported beneficiary of the Note and Deed of Trust, has a duty to exercise reasonable care[17] and skill to follow California Law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiffs that they did not have the legal authority to do. This includes not collecting or demanding mortgage payments when they do not have the right to enforce the obligation, causing the Plaintiffs to overpay in interest, making derogatory credit reports to credit bureaus, and failing to keep an accurate accounting of Plaintiffs mortgage payments, credits, and debits (if CitiMortgage, Inc is in fact the legally authorized mortgage servicer for the Plaintiffs).

83. CitiMortgage, Inc has a duty to exercise reasonable care and skill to refrain from taking any action against Plaintiffs that they do not have the legal authority to do. As a direct and proximate result of the reckless negligence, utter carelessness, and blatant fraud of the Defendants as set forth above, the chain of title to Plaintiffs' property has been rendered unmarketable and fatally defective and has caused Plaintiffs to lose saleable title to the subject property.

---

[17] Normally lenders and servicers do not owe a borrower a duty of care. *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1093 (1991). However, a bank may be liable in negligence if it fails to discharge its contractual duties with reasonable care. *Das v. Bank of Am*, 186 Cal. App.4th 727, 741 (2010). Additionally, a bank may be liable for aiding and abetting a tort when it renders "substantial assistance" to a tortfeasor during a business transaction that it knowingly aided in the commission of the tort. *Id.* (citing *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1144-45).

84. CitiMortgage, Inc breached that duty when they failed to follow the guidelines established in the PSA requiring the transfer of the Note and Deed of Trust into the "Aegis Asset Backed Securities Trust 2006-1, Mortgage Backed Notes" by the closing date.

85. As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trail, including attorneys' fees and costs of bringing suit to dispute, validate, and challenge said Defendants purported rights to enforce the Plaintiffs' alleged debt obligation.

**THIRD CAUSE OF ACTION - QUASI CONTRACT**

**[Against All Defendants and Doe Defendants]**

86. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

87. CitiMortgage, Inc, demanded monthly mortgage payments from Plaintiffs and continued to collect payments from Plaintiffs. Plaintiffs reasonably relied upon CitiMortgage, Inc assertion that it/they are/were entitled to the benefit of Plaintiffs' mortgage payments.

88. CitiMortgage, Inc knowingly accepted payments and retained them for its own use knowing that CitiMortgage, Inc did not acquire an interest in Plaintiffs' Note, such that they could accept or keep Plaintiffs' payments. It would be inequitable for CitiMortgage, Inc to retain the payments it received from Plaintiffs which it did not have legal authority to collect. The equitable remedy of restitution when unjust enrichment has occurred is an obligation created by the law without regard to the intention of the parties, and is designed to restore the aggrieved party to their former position by return of the thing or its equivalent in money.

89. Section 23 of the Deed of Trust states that: "Upon payment of all the sums secured by this Security Instrument, Lender shall request Trustee to re-convey the Property and shall surrender this Security Instrument and all notes

evidencing debt secured by this Security Instrument to Trustee. "Trustee shall re-convey the Property without warranty to the person or persons legally entitled to it." The obligations to Aegis Wholesale Corporation under the Deed of Trust were fulfilled when Aegis Wholesale Corporation received the balance on the Note as proceeds of sale of Plaintiffs' Note and Mortgage to a presently unknown entity. CitiMortgage, Inc has been unjustly enriched by collecting monthly payments from Plaintiffs when it has no interest in her Note.

90. Plaintiffs seek restitution for any payments they made to CitiMortgage, Inc that were not paid to the lender or beneficiary, if any.

## FOURTH CAUSE OF ACTION

## VIOLATION OF 12 U.S.C. § 2605 (RESPA)

### [Against CitiMortgage, Inc and Doe Defendants]

91. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

92. The subject loan is a federally regulated mortgage loan and is subject to the federal Real Estate Procedures Act (RESPA) and its implementing regulation, Regulation X.

93. On or about February 2012, Plaintiffs sent a Qualified Written Requests to Defendant CitiMortgage, Inc a ("QWR").

94. On information and belief CitiMortgage, Inc received QWR on or about February 2012.

95. The QWR contained information to enable CitiMortgage, Inc to identify Plaintiffs' loan and also contained requests for information of the loan, specifically the identity and contact information of the holder in due course of Plaintiffs' Note, accumulated late fees and charges, and requested information to verify the validity of the purported debt owed to CitiMortgage, Inc.

96. CitiMortgage, Inc did not provide the contact information for the purported holder of the Plaintiffs' Note, as required by 12 U.S.C. § 2605, et seq.

Instead, CitiMortgage, Inc responded by providing a partial account history of Plaintiffs' account. CitiMortgage, Inc responses did not respond to Plaintiffs' request and did not comply with the requirements of 12 U.S.C. § 2605, et seq.

97.   Because the Mortgage Loan is subject to RESPA and Regulation X, all Defendants were required to comply with Section 6 of RESPA appearing at 12 U.S.C. § 2605., Defendant  violated Section 6 of Regulation X upon receipt of Plaintiffs' QWR by their actions including, but not limited to;  (a) failure to make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of the correction; and (b) failure to protect Plaintiffs' credit rating upon receipt of QWR by furnishing adverse information regarding payment to credit reporting agencies as defined in § 603 of the Fair Credit Reporting Act, 15 U.S.C. § 1681(a).

98.   Thus, CitiMortgage, Inc violated 12 U.S.C. § 2605 and its subject to statutory damages, civil liability, penalties, attorneys' fees and actual damages. *See* 12 U.S.C. § 2605. The actual pecuniary damages include, but are not limited to, the over calculation and overpayment of interest on Plaintiffs' loan, the costs of repairing Plaintiffs' credit, the reduction and/or elimination of Plaintiffs' credit limits, costs associated with removing the cloud on their property title and setting aside the trustee's sale, and attorneys' fees and costs, in an amount to be proven at trial, but in excess of $75,000.00.

99.   As a direct and proximate result of the violations of RESPA and Regulation X by CitiMortgage, Inc Plaintiffs have suffered actual pecuniary damages, including but not limited to statutory damages, civil liability, and attorneys' fees, in an amount to be proven at trial.

///

///

///

///

# FIFTH CAUSE OF ACTION
## FOR VIOLATION OF 15 U.S.C. § 1692, ET SEQ.
### [Against All Defendants and Doe Defendants]

100.  Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

101.  Federal law prohibits the use of any "any false, deceptive, or misleading representation or means in connection with the collection of any debt.........including the false representation of...the character, amount, or legal status of any debt...and the threat to take any action that cannot legally be taken..."

102. In illegally attempting to collect on Plaintiffs' debt obligation in the manner described herein, Defendants CitiMortgage, Inc as the purported assignee, and CitiMortgage, Inc, as purported mortgage servicer:

    a) falsely represented the status of the debt, in particular, that it was due and owing to Defendant CitiMortgage, Inc at the time the suit was filed;

    b) falsely represented or implied that the debt was owing to Defendant CitiMortgage, Inc as an innocent purchaser for value, when in fact, such an assignment had not been accomplished;

    c) threatened to take action, namely engaging in collection activities that cannot legally be taken by them; and

    d) attempted to collect on the promissory note under false pretenses; namely that CitiMortgage, Inc was assigned Plaintiffs' debt when in fact they were not.

103.  Illegally collecting on alleged debts that were in default.  "The Senate report emphasized the application of this section 15 U.S.C. § 1692(a) §§ 4.3.10 to mortgage service companies and others who service outstanding debts for others,

so long as the debts were not in default when taken for servicing.  The Defendants violated the statute by their alleged assignments being filed many months after the debt had been in default.  The Defendant's actions were illegal in their attempts to collect on the alleged debts as debt collectors claiming to be beneficiaries and creditors of the alleged debt.  The Defendants have misrepresented the "character, amount and the legal status of the alleged debt".

## SIXTH CAUSE OF ACTION

## VIOLATION OF BUS. AND PROF. CODE SECTION 17200, ET SEQ.

### [Against All Defendants and Doe Defendants]

104.  Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

105.  Defendants' conduct, for the reasons stated herein, is in direct violation of 12 U.S.C. § 2605(e), et seq.

106.  Defendants' conduct, for the reasons stated herein, is in direct violation of Cal. Penal Code section 532(f)(a)(4).

107.  Cal. Bus and Prof. Code section 17200, et seq., prohibits acts of unfair competition, which means and includes any unlawful, unfair, or fraudulent business act and conduct which is likely to deceive and is fraudulent in nature.

108.  As more fully described above, Defendants' acts and practices are unlawful, unfair, and fraudulent. This conduct is ongoing and continues to this date.

109.  Defendants engage in unfair, unlawful[18], and fraudulent business practices with respect to mortgage loan servicing, and related matters by, among other things:

---

[18]  "Unlawful" acts or practices are those forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, or court-made. *Sanders v. Superior Court*, 27 Cal. 4th 832(1994); *Hewlett v. Squaw Valley*, 54 Cal. 4th 499 (1997).

a) executing and recording false and misleading documents[19];

b) executing and recording documents without the legal authority to do so;

c) failing to disclose the principal for which documents were being executed and recorded in violation of Cal. Civ. Code section 1095;

d) demanding and accepting payments for debts that were non-existent;

e) violating the Security First Rule;

f) reporting payments as late to credit bureaus without the legal right or authority to do so;

g) acting as beneficiary without the legal authority to do so

h) other deceptive business practices as described herein.

110. As more fully described above, defendants' acts and practices are likely to deceive members of the public.

111. Plaintiffs allege that by engaging in the above described acts and/or practices as alleged herein; Defendants violate several laws including Cal Bus. And Prof. Code section 17200, et seq. and must be required to disgorge all profits related to their unfair, unlawful, and deceptive business practices.

112. Plaintiffs allege that Defendants' misconduct, as alleged herein, gave defendants an unfair competitive advantage over competitors. The scheme implemented by Defendants is designed to defraud California consumers and enrich the defendants.

113. The foregoing acts and practices have caused substantial harm to California consumers, including Plaintiffs.

114. By reason of the foregoing, Defendants have been unjustly enriched and should be required to make restitution to Plaintiffs and other California

---

[19] Defendants' recording of the Corporate Assignment of Deed of Trust violates Cal. Penal Code section 532 (f)(a)(4), which prohibits any person from filing a document related to a mortgage loan transaction with the county recorder's office which that person knows to contain a deliberate misstatement, misrepresentation, or omission. The facts demonstrate that defendants have committed mortgage fraud by filing the Corporate Assignment of Deed of Trust with the county recorder's office with the knowledge that the document contained a deliberate misstatement, misrepresentation, or omission of fact.

consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to Cal. Bus. and Prof. Code sections 17203 and 17204.

115. As a direct and proximate result of the actions of Defendants, and each of them, stated above, Plaintiffs have been injured in that a cloud has been placed upon title to Plaintiffs' property and Defendants have failed to remove this cloud from Plaintiffs' title.

116. Plaintiffs are entitled to an order compelling CitiMortgage, Inc and any other Defendants claiming an interest in and to the property to take any and all actions necessary to remove the cloud they have placed upon her title and order enjoining such Defendants from taking such actions again in the future.

## SEVENTH CAUSE OF ACTION - ACCOUNTING
### [Against All Defendants and Doe Defendants]

117. Plaintiffs hereby incorporate by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

118. CitiMortgage, Inc as its purported agent; have held themselves out to be Plaintiffs' creditor and mortgage servicer. As a result of this purported relationship with Plaintiffs said Defendants have a fiduciary duty to Plaintiffs to properly account for payments made by Plaintiffs.[20]

119. As a result of the aforementioned fraudulent conduct, Plaintiffs paid CitiMortgage, Inc their mortgage payments for a period of approximately 5 and half years. However, for the reasons stated herein, none of this money was actually owed to CitiMortgage, Inc. For that reason, these monies are due to be returned to Plaintiffs in full.

---

[20] To state a cause of action for accounting, a Plaintiff must allege the existence of a fiduciary relationship, or accounts so complicated that an ordinary legal action demanding a fixed sum is impracticable. 5 Witkin, Cal. Proc. 4th (1997) Pleading, section 775, p. 233. The elements for a claim for accounting are: 1) fiduciary relationship or other circumstances appropriate to the remedy; and 2) a balance due from the defendant to the Plaintiffs that can only be ascertained by an accounting. *See* Witkin, California Procedure, Pleadings, section 776, p. 233 (4th ed.)

120.  The amount of the money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiffs are informed and believe and thereon allege that the amount due to them exceeds $75,000.00.

**WHEREFORE, Plaintiffs prays as follows:**

1.  For compensatory, special and general damages in an amount according to proof at trail, but not less than $6,750,000.00, against all Defendants;

2.  For punitive and exemplary damages in an amount to be determined by the Court against all Defendants;

3.  For an order compelling Defendants to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the property, including the purported "Corporate Assignment of Deed of Trust";

4.  For an order finding that Defendants have no legally cognizable rights as to Plaintiffs, the property, Plaintiffs' Promissory Note, Plaintiffs' Deed of Trust or any other matter based on contract or any of the documents prepared by Defendants, tendered to and executed by Plaintiffs;

5.  For the Court to issue an order restraining Defendants, their agents or employees from continuing or initiating any action against the property and enjoining Defendants, their agents or employees from doing so during the pendency of this matter;

6.  For an order compelling Defendants to disgorge all amounts wrongfully taken by them from Plaintiffs and returning the same to Plaintiffs' interest thereon at the statutory rate from the date the funds were first received from Plaintiffs;

7.  For costs of suit incurred herein;

8.  For reasonable attorneys' fees incurred; and

9.  For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

The Plaintiffs' Raul Huerta and Kathleen Huerta; hereby requests a jury trial on all issues raised in this complaint under the Seventh Amendment to the U.S Constitution in accordance with "Federal Rule of Civil Procedure 38."

Dated: _____

_____

Raul Huerta,
Plaintiff in Pro Per
*Without Recourse*

Dated: _____

_____

Kathleen Huerta,
Plaintiff in Pro Per
*Without Recourse*

## LIST OF EXHIBITS

Pursuant to *18 U.S.C. 1961(9),* Plaintiffs now formally incorporates Her and Her *documentary material* by reference to all of the following Exhibits, as if set forth fully here, to wit:

Exhibit A – Corporate Assignment of Deed of Trust – 2 pages w/cover

Exhibit B - MERS (Terms and Conditions) – 3 pages w/cover

Total Exhibit pages attached – 5

## **VERIFICATION**

I, Raul Huerta, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (Federal Government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: _____10/3/12_____

_____

Raul Huerta

## <u>ACKNOWLEDGEMENT</u>

State of California

County of ( San BERRARDINO )

On October 3, 2012 before me LaShawn Juneau, Notary Public

Personally appeared Raul Huerta , who proved to
me on the basis of satisfactory evidence to be the person(s) whose name(s) is / are
subscribed to the within instrument and acknowledgement to me that he / she / they
executed the same in his / her / their authorized capacity (ies), and that by her / her
/ their signatures(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California
that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

LASHAWN JUNEAU
COMM. #1909667
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Oct. 21, 2014

# VERIFICATION

I, Kathleen Huerta, Plaintiff in the above entitled action, hereby verify under penalty of perjury, under the laws of the United States of America, without the "United States" (Federal Government), that the above statement of facts and laws is true and correct, according to the best of my current information, knowledge, and belief, so help me God, pursuant to 28 U.S.C. 1746(1). See the Supremacy Clause in the Constitution for the United States of America, as lawfully amended (hereinafter "U.S. Constitution").

Dated: 10-3-12

Kathleen Huerta

## ACKNOWLEDGEMENT

State of California

County of ( San Bernardino )

On October 3rd, 2019 _____ before me Lashawn Juneau, Notary Public

Personally appeared _Kathleen Huerta_____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is / are subscribed to the within instrument and acknowledgement to me that he / she / they executed the same in her / her / their authorized capacity (ies), and that by her / her / their signatures(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

```
LASHAWN JUNEAU
COMM. #1909667
NOTARY PUBLIC - CALIFORNIA
SAN BERNARDINO COUNTY
My Comm. Expires Oct. 21, 2014
```

# EXHIBIT "A"

Electronically Recorded in Official Records, County of San Bernardino    3/26/2012
11:06 AM
DB



**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
906 Nationwide Title Clearing, Inc

[RECORDING REQUESTED BY]
INGEO
[AND WHEN RECORDED MAIL TO]
CitiMortgage, Inc.
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Investor L#

Doc #: **2012-0114679**

| Titles: 1 | Pages: 1 |
|---|---|
| Fees | 18.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 18.00 |

Tax Code/PIN: 1100-041-21



## CORPORATE ASSIGNMENT OF DEED OF TRUST

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust, without recourse, representation or warranty, together with all rights, title and interest secured thereby, all liens, and any rights due or to become due thereon to **CITIMORTGAGE, INC., WHOSE ADDRESS IS 1000 TECHNOLOGY DRIVE, O'FALLON, MO 63368-2240 (800)283-7918, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Deed of Trust made by **RAUL HUERTA AND KATHLEEN HUERTA** and recorded on 10/20/2008 as Instrument # 2006-0717293, in Book , Page in the office of the SAN BERNARDINO County Recorder, CA.

**IN WITNESS WHEREOF**, this Assignment is executed on 03/23/2012
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

DERRICK WHITE
ASST. SECRETARY

STATE OF FLORIDA    COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 23rd day of March in the year 2012, by DERRICK WHITE as ASST. SECRETARY for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR AEGIS WHOLESALE CORPORATION, ITS SUCCESSORS AND ASSIGNS, who, as such ASST. SECRETARY being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

TAMMI MYLEK WILLIAMS         NOTARY PUBLIC
COMM. EXPIRES:    DEC. 05, 2014

**TAMMI MYLEK WILLIAMS**
**NOTARY PUBLIC**
**STATE OF FLORIDA**
**Comm# EE046610**
**Expires 12/5/2014**

**Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
CIMAV 15927386  MERS (MOM) LOANS   MIN 100053030010277037 MERS PHONE 1-888-679-MERS
EFRMCA1



*15927386*

# EXHIBIT "B"



## TERMS AND CONDITIONS

1. MERS, which shall include MERSCORP, Inc. and Mortgage Electronic Registration Systems, Inc., and the Member shall abide by these Terms and Conditions, the Rules and Procedures (collectively, the "Governing Documents"), copies of which will be supplied upon request. The Governing Documents shall be a part of the terms and conditions of every transaction that the Member may make or have with MERS or the MERS® System either directly or through a third party. The Member shall be bound by any amendment to any of the Governing Documents.

2. The Member, at its own expense, shall promptly, or as soon as practicable, cause MERS to appear in the appropriate public records as the mortgagee of record with respect to each mortgage loan that the Member registers on the MERS® System. MERS shall serve as mortgagee of record with respect to all such mortgage loans solely as a nominee, in an administrative capacity, for the beneficial owner or owners thereof from time to time. MERS shall have no rights whatsoever to any payments made on account of such mortgage loans, to any servicing rights related to such mortgage loans, or to any mortgaged properties securing such mortgage loans. MERS agrees not to assert any rights (other than rights specified in the Governing Documents) with respect to such mortgage loans or mortgaged properties. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust and any other form of security instrument under applicable state law.

3. MERS shall at all times comply with the instructions of the holder of mortgage loan promissory notes. In the absence of contrary instructions from the note holder, MERS shall comply with instructions from the Servicer shown on the MERS® System in accordance with the Rules and Procedures of MERS.

4. No rights or obligations of the Member with respect to any data or information supplied to MERS by or on behalf of the Member shall be altered or affected in any manner by the provision of such data or information to MERS (except as otherwise specifically provided in these Terms and Conditions or the Rules of Membership).

5. If the Member uses MERS as Original Mortgagee (MOM) on the security instrument, the loan must be registered on the MERS® System within 10 days of the Note Date.

6. MERS and the Member agree that: (i) the MERS® System is not a vehicle for creating or transferring beneficial interests in mortgage loans, (ii) transfers of servicing interests reflected on the MERS® System are subject to the consent of the beneficial owner of the mortgage loans, and (iii) membership in MERS or use of the MERS® System shall not modify or supersede any agreement between or among the Members having interests in mortgage loans registered on the MERS® System.

7. If the Member has a third-party register loans (the "Registrar") on the MERS® System on behalf of the Member, the Registrar shall not be deemed an agent of MERS. The Registrar shall be solely an agent for the Member, and MERS is only giving consent to the Member to use a Registrar to enter information on the MERS® System on behalf of the Member. The Member agrees that MERS is not liable to the Member for any errors and omissions, negligence, breach of confidentiality, breach of the Rules and Procedures, or willful misconduct of the Registrar, or any employee, director, officer, agent or affiliate of the Registrar in performing its services to the Member.

8. The Member shall promptly pay to MERS the compensation due it for transactions registered on the MERS® System and other services rendered to the Member based on the then current MERS fee schedules, which may change from time to time. The Member shall promptly pay to MERS any interest and penalties on delinquent fee payments at the rate set by MERS from time to time. MERS shall have the authority to impose reasonable penalties and fines on Members for breach of the Governing Documents, and the Member shall promptly pay such fines in accordance with the terms of their imposition.

9. MERS shall indemnify and hold harmless the Member, and any employee, director, officer, agent or affiliate of the Member ("Member Party"), from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses ("Indemnified Payments") that the Member Party may sustain directly from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, breach of the Rules and Procedures, or willful misconduct of MERS, or any employee, director, officer, agent or affiliate of MERS ("MERS Indemnified Claim"). Notwithstanding the foregoing, MERS shall not be liable or responsible under the terms of this Paragraph for any losses or claims

resulting from the actions or omissions of any person other than an employee, director, officer (who is also an employee of MERS), agent or affiliate of MERS.

The Member shall indemnify and hold harmless MERS, and any employee, director, officer, agent or affiliate of MERS ("MERS Party"), for any Indemnified Payments which do not result from a MERS Indemnified Claim and which such MERS Party incurs (i) from the negligence, errors and omissions, breach of confidentiality, breach of the Terms and Conditions, Rules and Procedures, or willful misconduct of a Member Party, (ii) with respect to a transaction on the MERS® System initiated by such Member, or (iii) as a result of compliance by MERS with instructions given by the Member, or its designee, as beneficial owner, servicer or secured party shown on the MERS® System ("Member Indemnified Claim").

MERS shall promptly notify the Member if a claim is made by a third party against either MERS or the Member with respect to any mortgage loan registered on the MERS® System in which the Member is shown on the MERS® System as beneficial owner, servicer or secured party in accordance with the Rules and Procedures. The Member shall promptly notify MERS if a claim is made against the Member that may be subject to the indemnification provisions of this Paragraph.

The obligations of MERS and the Member under this Paragraph shall survive the termination of the Member's use of the MERS® System.

10. MERS and the Member shall maintain appropriate insurance coverage that shall include an errors and omissions insurance policy and a fidelity bond. MERS shall not be required to maintain coverage for persons who may be appointed at the request of the Member as certifying officers of MERS. The Member's policies shall protect and insure MERS against losses in connection with the release or satisfaction of a mortgage loan without having obtained payment in full of the indebtedness secured thereby. Upon request, MERS or the Member shall cause to be delivered to the other a certified true copy of such errors and omissions insurance policy and fidelity bond.

In the event of any loss of principal or interest on a mortgage loan or any Indemnified Payments for which reimbursement is received from a fidelity bond or any errors and omissions insurance policy or other insurance policy, the proceeds from any such bond or insurance shall be held in trust for and be promptly paid to the Member who is shown as the servicer on the MERS® System on behalf of the beneficial owner unless otherwise requested by the beneficial owner.

11. Any notice or other communication which is required or permitted to be given or made to MERS pursuant to any provision of the Governing Documents shall be given or made in writing and shall be sent by nationally recognized overnight courier, or facsimile followed by delivery of the original via first class mail, addressed as follows: MERS, Corporate Secretary, 1818 Library Street, Suite 300, Reston, Virginia, 20190.

12. These Terms and Conditions and all transactions effected by the Member with MERS shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

13. Neither the Member nor MERS shall institute a proceeding before any tribunal to resolve any controversy or claim arising out of or relating to these Terms and Conditions, Rules and Procedures, or the breach, termination or invalidity thereof (a "Dispute), before such party has sought to resolve the Dispute through direct negotiation with the other party. If the Dispute is not resolved within thirty (30) days after a written demand for direct negotiation, the parties shall attempt to resolve the Dispute through mediation. If the parties do not promptly agree on a mediator, either party may request the then chief judge of the Circuit Court of Fairfax County, Virginia to appoint a mediator. All mediation proceedings hereunder shall be held in Washington, D.C. If the mediator is unable to facilitate a settlement of the Dispute within a reasonable period of time, as determined by the mediator, the mediator shall issue a written statement to the parties to that effect and the aggrieved party may then seek relief in accordance with the arbitration provisions of this Paragraph. The fees and expenses of the mediator shall be paid by the party initiating the Dispute.

In the event that the Member and MERS are not able to resolve a Dispute in accordance with the mediation provisions of this Paragraph, such Dispute shall be settled by binding arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof; provided, however, that the place of arbitration shall be Washington, DC, and fees and expenses for the arbitration proceedings shall be paid by the party initiating arbitration.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is Sheri Pym.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 1702 VAP (SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

#### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[X] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☑) <br> RAUL HEURTA & KATHLEEN HUERTA | DEFENDANTS <br> CITIMORTGAGE, INC; QUALITY LOAN SERVICE CORPORATION; and DOES 1 THROUGH 10 INCLUSIVE, |
|---|---|
| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) <br><br> RAUL HUERTA & KATHLEEN HUERTA   In Pro Per <br> 13024 MALVASIA WAY <br> RANCHO CUCAMONGA, CA  91739      Cell: (909) 899-9562 | Attorneys (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes   ☑ No      ☑ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)
15 U.S.C §1692-1692p, et seq.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☑ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _____ ED CV 12 - 01702 VAP SPx

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). **IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No ☐ Yes
If yes, list case number(s): _____

VIII(b). **RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                                ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                                ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                                ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

IX. **VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐    Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County , California | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐    Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | State of New York |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County , California | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _*Jennifer Nuesta*_       Date _10-3-12_

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

Name & Address:
Raul Huerta & Kathleen Huerta, In Pro-Per
13024 Malvasia Way
Rancho Cucamonga, CA 91739
Cell: (909) 899-9562

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| RAUL HUERTA & KATHLEEN HUERTA, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | ED CV 12 - 01702 VAP SPx |
| v. | |
| CITIMORTGAGE, INC; QUALITY LOAN SERVICE CORPORATION; and DOES 1 THROUGH 10 INCLUSIVE, | **SUMMONS** |
| DEFENDANT(S). | |

TO:      DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Raul Huerta&Kathleen Huerta, Pro Per_ , whose address is _13024 Malvasia Way, Rancho Cucamonga, CA 91739_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

TERRY NAFISI

Clerk, U.S. District Court

Dated: OCT - 4 2012

By: _____
L. MURRAY
Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*